**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JUDY K. LITTLETON, ) | |
| ) | CASE NO. 5:12-cv-02756 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE PATRICIA A. GAUGHAN |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Judy K. Littleton ("Littleton") challenges the final decision of the Commissioner of Social Security ("Commissioner"), denying her claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

**I. Procedural History**

On August 10, 2009, Littleton filed an application for POD and DIB alleging a disability onset date of October 31, 2007. Her application was denied both initially and upon reconsideration.

On May 25, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Littleton, represented by counsel, and an impartial vocational expert ("VE") testified. On June 13, 2011, the ALJ found Littleton was able to perform her past relevant work and, therefore, was

not disabled. (Tr. 23-24.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age fifty on her alleged onset date, Littleton was a "person closely approaching advanced age" under social security regulations. *See* 20 C.F.R. § 404.1563(d). Littleton has a high school education and past relevant work as an administrative assistant, customer service representative, landscaping estimator, and telemarketer. (Tr. 23, 31-32.)

*Hearing Testimony*

In relevant part, Littleton testified at the hearing as follows:

- She is five feet and five inches tall weighing 220 pounds. (Tr. 32.)

- Her last job ended because she could no longer perform it. Her prescription drugs made it difficult for her to concentrate and she felt drowsy and disoriented. (Tr. 36.)

- She has not attempted to find work in the past few years. (Tr. 36.)

- She was first diagnosed with trigeminal neuralgia in 1993. (Tr. 37.)

- Her symptoms cause her to feel burning and electrical shock-like, sharp pain in her face. She experiences such pain constantly, but feels sharper painful jolts two to four times daily. The sharp pain lasts from five to fifteen minutes. (Tr. 38.)

- After gamma knife surgery, she developed anesthesia dolorosa in the left side of her face, making her pain worse. (Tr. 39.)

- She experiences more pain in cold weather. (Tr. 41.)

- On a typical day, she rated her pain as an eight on a ten point scale. (Tr. 41.)

- Speaking, eating, and touching increases her facial pain. (Tr. 42.)

- Her husband performs all the chores, though she can fold clothes. (Tr. 43.)

- Her hobbies include scrap-booking. (Tr. 43.) She is able to drive, and has no driving restrictions, but feels she should not do so often. (Tr. 44.) She passes the time on the internet, keeping up with friends and family on Facebook and reading newspaper articles. (Tr. 47-48.)

- Her prescriptions include Vimpat (an anti-seizure medication), Nucynta for pain, and an anti-nausea medication. (Tr. 44-45.) Initially, she denied suffering any side effects from her medications, but then indicated that the anti-seizure drug affects her memory and vision. (Tr. 45-46.)

- She takes two to three naps per day.  (Tr. 49.)
- She experiences headaches four times per week which can last up to a day or two. The headaches do not cause nausea or vomiting, but she experiences some sensitivity to noise and light.  (Tr. 46.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Littleton was insured on her alleged disability onset date, October 31, 2007, and remained insured through the date of the ALJ's decision, June 13, 2011.  (Tr. 16.)  Therefore, in order to be entitled to POD and DIB, Littleton must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

---

[1]  The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Littleton established medically determinable, severe impairments, due to "trigeminal neuralgia, Anesthesia Dolorosa of the left face, asthma, and obesity." (Tr. 16.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 17.) Littleton was found capable of performing her past relevant work, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 18, 23.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Littleton was not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

*Treating Physician*

Littleton argues the ALJ erred by failing to follow the treating physician rule and ascribing only little weight to the opinion of Jose Casanova, M.D. (ECF No. 10 at 8-14.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*,

5

581 F.3d 399 (6th Cir. 2009) (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2] Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

While Littleton argues that the ALJ erred by ascribing little weight to Dr. Casanova's opinion, she does not clearly identify which portions of the opinion she believes were improperly rejected. (ECF No. 10 at 8-14.) As such, the Court will presume that Littleton is challenging the weight ascribed to opinions contained in Exhibits 5F and 15F – which were expressly discussed by the ALJ. (Tr. 22-23.)

In Exhibit 5F, an undated "Headaches Impairment Questionnaire,"[3] Dr. Casanova opined that Littleton suffered from "trigerminal [sic] neuralgia status post posterior fossa decompression." (Tr. 258.) He reported that Littleton suffers daily headaches causing severe

---

[2] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and
frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

[3] The ALJ indicates that the questionnaire was completed on June 6, 2009. Although undated, the questionnaire does state that Littleton was last seen on June 2, 2009. (Tr. 258-263.)

6

pain that radiates to the front. (Tr. 258-259.) He also included a reference to Littleton's recent gamma knife radiosurgery and that she was prescribed Percocet and Lidocaine. (Tr. 261.) Substantial portions of the questionnaire were not completed. (Tr. 260, 262.) Dr. Casanova indicated that he had been unable to completely relieve Littleton's pain without unacceptable side affects despite attempting to substitute medications. (Tr. 261.) He opined that Littleton's pain symptoms would constantly interfere with her attention and concentration. He expected her impairments to last at least twelve months. *Id*. He believed Littleton could tolerate "low stress" work, but would be precluded from basic work activities while experiencing a headache. (Tr. 262.) He believed Littleton would miss more than three days of work per month as a result of her impairments or treatment. *Id*.

In Exhibit 15F, a letter from Dr. Casanova to Littleton's counsel dated December 2, 2010, Littleton was described as suffering from chronic neuropathic pain in the left side of the face for many years. (Tr. 440.) Dr. Casanova stated that the patient rated her pain 7 to 8/10 after the surgery, and that it is aggravated by touch, temperature, and pressure. *Id*. He indicated that Littleton had clearly "developed anesthesia Delarosa [sic] of the left face," resulting in severe pain and numbness that is resilient to any known treatment. *Id*. Based on the above, Dr. Casanova expressed his belief that she was permanently unable to work. (Tr. 441.)

The ALJ addressed Dr. Casanova's opinions as follows:

The record includes separate written statements provided by the claimant's treating neurologist, Dr. Casanova, which provide his opinions as to the claimant's impairments and the limitations they impose. First, on June 6, 2009, Dr. Casanova completed a "Headaches Impairment Questionnaire" that indicated his "poor' prognosis for the claimant's trigeminal neuralgia, at that time status post just the posterior fossa decompression, and his opinion that the claimant's daily, severe pain that evades relief from Percocet and Lidocaine would "constantly" interfere with attention and concentration and would reduce her to low-stress work, that her headaches would generally preclude her from performing even basic work activities and would require her to take breaks from the workstation, and would cause her to be absent from work more than three times a month (Ex. 5F/2-7). I have given little weight to these opinions, as nothing in the medical evidence supports Dr. Casanova's assertions that the frequency of severity of the claimant's headaches and neuropathic pain are so constant and incapacitating as to cause these restrictions. He also provided no specific functional restrictions in terms of sitting, standing, lifting, walking, climbing, or bending. Generally, I find Dr. Casanova's June 2009 statements do not provide sufficient opinion evidence as to specific limitations and therefore gave them little weight.

7

> He also supplied correspondence dated December 2, 2010 and addressed to the claimant's representative, in which he described the claimant's chronic neuropathic pain in the left face that has persisted for many years in the face of several surgical interventions and multiple medications (Ex. lSF). He also described the onset of the claimant's Anesthesia Dolorosa with "quite more severe" constant pain on the left side of her face. Dr. Casanova opined that, "given the severity of [her] pain and also side effects from medications, she is unable to work." Dr. Casanova's statement as to the claimant being "unable to work" represents an opinion on the issue of disability that is reserved to the Commissioner of Social Security (SSR 96-Sp) and is given no weight. In addition, little weight is given to Dr. Casanova's classification of the claimant's constant pain as "7-8" out of 10-which is the sole underpinning of that opinion-as inconsistent with the level of pain recorded in his own treatment notes from July 2010 and November 2010 (Ex. 14F/1,3) and further discrepant with the July 2010 note from Dr. Daoud of "Pain Scale 0/10" (Ex. 13F/IO).

(Tr. 22-23.)

The question of whether a claimant is disabled is an issue expressly reserved for the Commissioner and does not constitute a medical opinion. 20 C.F.R. § 404.1527(d)(1). An ALJ need not give any weight to a conclusory statement of a treating physician that a claimant is disabled, and may reject determinations of such a physician when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984). "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled," as it is the Commissioner who must make the final decision on the ultimate issue of whether an individual is able to work. *See* 20 C.F.R. § 404.1527(e)(1); *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982). As such, Dr. Casanova's opinion that Littleton was unable to work did not constitute a "medical opinion" as it is an issue reserved to the Commissioner. Pursuant to 20 C.F.R. § 404.1527(d)(3), an ALJ need "not give any special significance to the source of an opinion on issues reserved to the Commissioner." The rationale for reserving these issues to the Commissioner is that "they are administrative findings that are dispositive of a case; *i.e.* that would direct the determination of disability." 20 C.F.R. § 404.1527(d). "However, opinions from any medical source on issues reserved to the Commissioner must never be ignored." SSR 96-5P (July 2, 1996) (an ALJ "is required to

evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.... [and] must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.")

Here, the ALJ did not simply ignore the opinion of Dr. Casanova that Littleton was unemployable. The ALJ explained that the "underpinning of that opinion" – Littleton's constant pain rated as 7/10 or 8/10 – was inconsistent with the record. (Tr. 23.) Furthermore, the ALJ did not merely conclude that such pain was inconsistent, but cites specific portions of the record throughout the opinion that reveal no reports of pain to another treating physician or significantly less severe pain as self-reported by Littleton. (Tr. 20-23.) As such, the ALJ clearly evaluated the evidence of record to determine the extent to which the opinion was supported. The ALJ, however, properly ascribed no special weight to the opinion, as the regulations "precluded [him] from giving any special significance to the source." SSR 96-5p.

The only other assessment offered by Dr. Casanova that was inherently inconsistent with the ultimate RFC was the opinion that Littleton would miss more than three days of work per month as a result of her impairments or treatment, ostensibly due to constant pain. In this Court's experience, such a limitation – missing three or more days per month – typically precludes gainful employment. Vocational experts routinely testify that such absenteeism would be unacceptable to employers and result in no competitively available jobs. *See, e.g., St. Clair v. Astrue*, 5:09-cv-2736, 2010 WL 3370568 at \*5 (N.D. Ohio Aug. 25, 2010); *Godec v. Astrue*, 1:12-CV-01041, 2013 WL 1156506 (N.D. Ohio Jan. 30, 2013) *report and recommendation adopted*, 1:12 CV 01041, 2013 WL 1159034 (N.D. Ohio Mar. 20, 2013); *Wilson v. Comm'r of Soc. Sec.*, 5:09CV130, 2010 WL 424969 at \*7 (N.D. Ohio Jan. 26, 2010). Here too, the VE testified that there would be no jobs available to a hypothetical individual who would be absent three or more times a month. (Tr. 56.) The question is whether such an opinion constitutes a "medical opinion" within the meaning of the regulations or whether it is tantamount to a disability finding or an opinion that a claimant is unemployable.

Medical opinions are statements from physicians and psychologists or other

9

> acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. § 404.1527(a)(2).

By contrast, "judgments that **go beyond purely medical findings** to reach 'issues reserved to the Commissioner' -- such as the claimant's RFC, whether he meets or equals a listing at step three, application of vocational factors, and the ultimate question of disability -- 'are not medical opinions'" as described by the regulations. *See Lackey v. Barnhart*, 127 Fed. Appx. 455, 457 (10th Cir. 2005). There is some debate as to whether a treating physician's prediction as to the number of absences a patient might have from work each month constitutes a "medical opinion" under the regulations. Some recent decisions from another district court within the Sixth Circuit strongly suggest that they are not. In *Hagan v. Colvin*, the court observed that an examining (but non-treating) physician opined that the claimant "would experience 'frequent' problems with attention/concentration, 'frequent' need for unscheduled breaks, and absences from work of 'more than four days per month' due to pain, subjective symptoms, and treatment." *Hagan*, 1:12-CV-00199, 2013 WL 3350838 at *3 (W.D. Ky. July 3, 2013). However, that court found that the physician's "findings, if accepted, would render [the claimant] incapable of any type of full-time work. As such, they are not truly medical opinions but rather opinions that are tantamount to an finding of disability, which are entitled to no "special significance." *Id.* (*citing* 20 C.F.R. § 404.1527(d)(3)). This opinion is consistent with an earlier decision of the same court:

> 20 C.F.R. § 404.1527(e) provides that an opinion from medical sources that a claimant is "unable to work" full-time or any other opinion on an issue that is "dispositive of a case, i.e., that would direct the determination or decision of disability" is not deemed to be a "medical opinion" but rather a medical source opinion on an issue "reserved to the Commissioner" and, as such, is entitled to no "special significance." The magistrate judge concludes that the ALJ did not err in declining to give controlling weight to Dr. Turbo's *per-se* disabling opinions on issues "reserved to the Commissioner." The residual functional capacity (RFC) determination is expressly reserved for the Commissioner, and this is especially so when the RFC assigned by a medical source is tantamount to a finding of disability. *See* 20 C.F.R. §§ 404.1527(e)(2) and 404.1546. Such a determination is part of the disability evaluation. 20 C.F.R. § 404.1546. Stated somewhat differently, **Dr. Turnbo did not "know," in the sense of an objective medical fact**, **that, if properly motivated, the plaintiff** would be incapable of sustaining alternate sitting/standing for an 8–hour workday and **would require absences in**

10

> *excess of 4 days per month*. Therefore, as a threshold matter, Dr. Turnbo's opinion was not a genuine "medical opinion." We do not reach the issue of whether such an opinion was entitled to controlling weight pursuant to 20 C.F.R. § 404.1527(d)(2) because the regulation applies only to "medical opinions."

*Arnett v. Astrue*, 5:08-CV-62, 2008 WL 4747209 at *5 (W.D. Ky. Oct. 17, 2008) (emphasis added).

The Court recognizes that there are other decisions that, at least implicitly, stand for the contrary proposition, i.e., that it is error for an ALJ to reject such an opinion without setting forth "good reasons" for doing so. *See, e.g., Schulz v. Astrue*, 849 F. Supp.2d 1049, 1054-55 (W.D. Wash. 2011) (finding that the ALJ erred by rejecting a treating physician's opinion that claimant would miss five days of work per month where the reasons given for rejecting it were not supported by substantial evidence); *Branson v. Astrue*, 3:07- cv-41, 2008 WL 111317 at *5 (E.D. Tenn. Jan. 8, 2008) (ALJ erred in discounting treating surgeon's opinion as to claimant's ability to sit/stand/walk and predicted absences); *cf. Stenberg v. Comm'r of Soc. Sec.*, 303 Fed. App'x 550 (9th Cir. 2008) (while referring to opinions that a claimant would have two or more absences per month as "medical opinions," the court found the ALJ properly rejected said opinions when the ALJ properly found the claimant's testimony to be less than credible).

Because an opinion that an individual will miss three or more days a month is *per se* disabling, the Court finds that it would be inconsistent with the regulations to treat such an opinion as a "medical opinion." In this Court's view, such an opinion is tantamount to a disability finding. Therefore, an ALJ should treat such an opinion akin to other opinions on issues reserved for the Commissioner.[4] As such, those opinions should not be ignored, but are also not entitled to any special weight. Therefore, while an ALJ must explain why such an opinion has not been followed, such explanation need not be as exacting as the "good reasons"

---

[4] In some circumstances, the Court recognizes that an opinion as to the number of days a claimant would miss may be more akin to a medical opinion than an opinion as to a claimant's employability. Where, due to the normal course of treatment for an impairment or impairments, a patient has actually missed or is scheduled to miss a certain number of days, the physician's opinion is not the product of conjecture and rather a *bona fide* medical opinion. However, this is not such a case.

rule regarding the medical opinions of treating physicians contained in 20 C.F.R. § 404.1527(c)(2).

The Court finds that the ALJ sufficiently explained his reasons for rejecting Dr. Casanova's opinion as to Littleton's predicted absenteeism.  The ALJ explained that the alleged constant pain caused by Littleton's headaches and neuropathic pain was the only basis for the limitation ascribed.  Reading the ALJ's opinion as a whole, it frequently points out that Littleton's self-reported pain was rated significantly less than seven or eight out of ten, and often did not even merit any mention to Dr. Daoud, as discussed below in the credibility assessment. (Tr. 20-23.)

Therefore, Littleton's first assignment of error should be rejected.

*Credibility*

Littleton asserts that the ALJ erred by improperly assessing her credibility, because he failed to provide specific reasons that were supported by substantial evidence.  (ECF No.  10 at 16.)

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition.  20 C.F.R. §§ 404.1529 & 416.929; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992) (noting that "this court has previously held that subjective complaints of pain may support a claim for disability").  It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms.  First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment.  Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms."  SSR 96-7p.  Essentially, the same test applies where the alleged symptom is pain, as the Commissioner must (1) examine whether the objective medical evidence supports a finding of an underlying medical condition, and (2) whether the objective medical evidence confirms the alleged severity of pain or whether the objectively established medical condition is

of such a severity that it can reasonably be expected to produce the alleged disabling pain. *See Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

If the claims are not substantiated by the medical record, the ALJ must make a credibility determination based on the entire case record. *Id*. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *accord Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) ("[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.") Beyond medical evidence, there are seven factors that the ALJ should consider.[5]

Here, the ALJ expressly found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements

---

[5] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96–7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 732-733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they were inconsistent with the ... [RFC] assessment." (Tr. 19.)

The Court disagrees that the ALJ failed to provide sufficiently specific reasons in assessing Littleton's credibility. He considered many of the factors listed in SSR 96-7p. First, he noted the conflict between Littleton's hearing testimony and her self-reporting to treatment providers regarding the intensity of her pain. Although Littleton testified at the hearing that her pain level was 8/10 on a ten point scale, the ALJ expressly pointed out that Littleton consistently rated her pain much lower throughout the record. (Tr. 21.) He also notes that while Littleton complained of pain to Dr. Casanova, she frequently voiced no complaints of neurological pain or headaches to her other treating physician, Dr. Daoud. (Tr. 20-21.) The ALJ also discussed the medications prescribed to control Littleton's pain and her statement to Dr. Casanova that she only takes Percocet occasionally when her pain is extreme. (Tr. 20-21.) In addition, the ALJ found that there was little evidence to support the side effects alleged by Littleton. (Tr. 22.) He also noted Dr. Casanova's statement that Littleton's headaches may possibly stem from medication overuse, and pointed out that discontinuance of Motrin and the prescription of Topamax and Maxalt appeared to have resolved her headaches. (Tr. 21.) The ALJ found no reports in the record from either Drs. Casanova or Daoud of headaches lasting several days. *Id.* He also opined that Littleton's daily activities, including her ability to drive, spend time on the internet and Facebook, read the news, and her hobbies were inconsistent with her allegation that she cannot sufficiently concentrate. (Tr. 23.) Finally, the ALJ discussed Littleton's presentation at the hearing. (Tr. 21.) While Littleton takes issue with the ALJ's layperson observations, this constitutes only a minor portion of the ALJ's credibility analysis. (ECF No. 10 at 17.)

Here, the ALJ provided sufficiently specific reasons for his credibility determination and supported those reasons with specific evidence in the record. While the ALJ did not discuss every factor in SSR 96–7p, an ALJ need not do so as long as it is shown that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 733 (N.D. Ohio 2005); *Masch v. Barnhart*, 406 F.Supp.2d 1038, 1046 (E.D. Wis. 2005). Furthermore, it is not this Court's function to re-assess the credibility finding.

14

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner should be AFFIRMED and judgment entered in favor of the defendant.

s/ Greg White  
United States Magistrate Judge

Date: September 16, 2013

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**