UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Judy K. Littleton, ) | CASE NO. 5:12 CV 2756 |
| ) | |
| Plaintiff, ) | JUDGE PATRICIA A. GAUGHAN |
| ) | |
| Vs. ) | |
| ) | |
| Commissioner of Social Security, ) | **Memorandum of Opinion and Order** |
| ) | |
| Defendant. ) | |

**INTRODUCTION**

This matter is before the Court upon the Report and Recommendation of Magistrate Judge Greg White (Doc. 13) recommending that the decision of the Administrative Law Judge ("ALJ") be affirmed. Plaintiff filed objections. For the reasons that follow, the Court ACCEPTS the Report and Recommendation ("R&R") and, for the reasons stated herein, AFFIRMS the decision of the Commissioner.

**FACTS**

The facts of the case are largely undisputed. Plaintiff was diagnosed with trigeminal neuralgia in 1993. As a result, she feels burning and electrical shock-like symptoms in her face.

1

She experiences pain "constantly" with intense pain episodes occurring two to four times per day and lasting a few minutes each.  In 2004, plaintiff underwent a left-sided microvascular (posterior fossa) decompression, which was a surgical procedure designed to improve her trigeminal neuralgia.  Shortly after the procedure, plaintiff's symptoms worsened.  She then underwent radiofrequency with glycerol rhizotomy at Johns Hopkins Medical Center.  She continued to have pain after this second surgical procedure and, therefore, began treating with Dr. Casanova, a board certified neurologist.  Dr. Casanova attempted to treat her condition with certain medicals, but those were discontinued due to their side effects.  By 2008, plaintiff had "severe occipital pain radiating into her palatal region, which was along the left greater occipital nerve distribution."  The ALJ noted that "with continued facial and occipital pain that was becoming more and more intolerable," plaintiff was referred to University Hospitals.  At her appointment, plaintiff noted that the burning and intermittent electrical shock-like pain was exacerbated by eating, touching, cold wind, or brushing her teeth.  On April 21, 2009, plaintiff elected to proceed with "Gamma Knife" surgery.  Plaintiff, however, continued to experience pain and, in fact, developed "anesthesia dolorosa" in the second division of her left trigeminal nerve.

Plaintiff also reported headaches to Dr. Cassanova.  In a Headache Questionnaire completed by Dr. Casanova, he opined that plaintiff suffered from "severely intense" headaches on a "daily basis."  He further indicated that this pain would "constantly" interfere with her attention and concentration.  As a result, Dr. Casanova opines that plaintiff will miss work "more than three times per month."  His treatment notes indicate that plaintiff reported the headaches to him on December 7, 2009.  In the treating notes, Dr. Casanova notes that the headache is a

"possible medication overuse headache" and suggests that plaintiff discontinue Motrin.  In subsequent treatment notes, there is no further mention of headaches.

The ALJ held a hearing on this matter at which plaintiff and a vocational expert testified. The ALJ concluded that plaintiff could perform her past relevant work and, therefore, was not disabled.  This appeal followed.

The Magistrate Judge recommends that the decision of the ALJ be affirmed.  According to the Magistrate Judge, the ALJ properly applied the treating physician rule.  The Magistrate Judge further determined that Dr. Casanova's opinion that plaintiff would be unable to work at least three days per month is not a "medical opinion" and is therefore not entitled to any deference. The Magistrate Judge concluded that this "opinion" goes beyond a  "pure medical finding" and instead reaches questions expressly reserved to the Commissioner.  The Magistrate Judge further recommends that the ALJ did not err in assessing plaintiff's credibility.

Plaintiff objects to the R&R.  According to plaintiff, the ALJ failed to follow the treating physician rule and further failed to properly assess plaintiff's credibility.  Plaintiff argues that Dr. Casanova's opinion "on how often [plaintiff] will be absent from work and how frequently her symptoms will interfere with attention and concentration" are medical opinions.  Each issue will be addressed in turn.

1. Treating physician rule

Under Sixth Circuit law, the opinion of a treating physician is given controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (quoting 20 C.F.R. § 404.1527(d)(2)).

3

In the event the ALJ concludes that the medical opinion is inconsistent with other substantial evidence, the opinion may be given less than controlling weight, but should not be rejected. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)  (Soc. Sec. Rul. 96-2p). Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Id*.  In the event the treating physician's opinion is not given controlling weight, the ALJ must determine how much weight is appropriate for the opinion and must consider: (1) the length, frequency, nature, and extent of the treatment relationship; (2) consistency of the physician's conclusions; and (3) any specialization of the treating physician. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

Upon review, the Court finds that the ALJ did not err in applying the treating physician rule in analyzing plaintiff's disability claim.  The ALJ noted that Dr. Casanova opined on the headaches questionnaire that plaintiff's daily severe pain would "constantly" interfere with her attention and concentration and that her headaches would preclude her from basic work activities and cause her to be absent from work "more than three times a month."  The ALJ noted that he assigned "little weight" to these opinions because nothing in the medical record supports such extreme restrictions.  In fact, as noted by the ALJ, plaintiff saw Dr. Daoud, her primary care physician, a number of times throughout the treatment period.  With regard to her pain scale, plaintiff reported to Dr. Daoud a "0/10" on a number of occasions.  As noted by the ALJ, there is no mention of any severe pain issues in any of Dr. Dauod's treatment notes.  In addition, with regard to the headaches, Dr. Daoud regularly noted "no headaches" on his treatment notes.  The ALJ further points out that plaintiff presented to her appointments with Dr. Daoud in "no acute

4

distress...fully oriented with a normal psychiatric affect and mood, and showed no overt signs of pain behavior." The Court further notes that Dr. Daoud's treatment notes routinely show that plaintiff suffers from "no decrease in ability to concentrate." In fact, within one week of reporting "daily" headaches to Dr. Casanova, plaintiff reported "no headaches" to Dr. Daoud. In addition, after noting that plaintiff may suffer from "medication overuse headaches," and advising plaintiff to quit Motrin, there is no further mention of headaches in Dr. Casanova's notes. In sum, the ALJ did not err in assigning less than controlling weight to the opinion of Dr. Casanova as it was inconsistent with other substantial evidence in the record.

The Court further rejects plaintiff's argument that the ALJ erred in assessing the weight he did assign to Dr. Casanova's opinion. Here, the ALJ noted that plaintiff began treatment with Dr. Casanova in February of 2007 and further noted that plaintiff last saw Dr. Casanova on November 30, 2010. In addition, the ALJ expressly indicated that Dr. Casanova is a neurologist who specifically treated plaintiff for her neurological disorders and headaches. The ALJ extensively analyzed the opinions of Dr. Casanova and compared them to the overall medical record as well as Dr. Casanova's own treatment notes. For example, the ALJ noted that Dr. Casanova reported that plaintiff suffered from severe daily headaches. Yet, after he suggested that plaintiff discontinue Motrin, there is no further indication in his notes that plaintiff suffered from any headaches, let alone those as debilitating as he describes in the Headache Questionnaire. Accordingly, the Court finds that the ALJ did not err in assigning "little weight" to the opinions of Dr. Casanova. The ALJ properly noted the nature and extent of the treating history, noted Dr. Casanova's specialty, and indicated that Dr. Casanova's opinions were not supported by his own treatment notes or the medical records provided by Dr. Daoud. For

example, in or around June of 2009, Dr. Casanova opined that plaintiff suffered from "daily headaches."  The treatment notes indicate that a colleague of Dr. Casanova treated plaintiff for headaches in 2000 and Dr. Cassanova treated plaintiff on December 7, 2009.  Yet a number of treatment notes both before and after June of 2009 make no mention of headaches.

The Magistrate Judge recommends that the Court finds that Dr. Casanova's opinion as to plaintiff's "need" to miss work more than three times per month is not a medical opinion.  The Court finds that it need not reach this issue as no party raised it in the briefing before the Magistrate Judge.  Regardless, the Court finds that, assuming *arguendo*, the opinion is a "medical opinion," the ALJ properly analyzed the opinion under the treating physician rule.  As set forth above, the ALJ assigned this opinion "little weight" because it is not consistent with the treatment notes of plaintiff's primary care physician and is inconsistent with Dr. Casanova's own treatment notes both before and after the date of his opinion.  As set forth above, treatment notes from Dr. Daoud consistently indicate "no headaches" and a pain scale of "0/10."  In addition, after recommending that plaintiff discontinue Motrin and begin a different medication, there are no further treatment notes discussing headaches.  Therefore, even if this opinion is a "medical opinion," the ALJ properly weighed it under the treating physician rule.

The Court is careful to note that the ALJ did conclude that plaintiff suffered from medically determinable impairments.  In addition, the ALJ noted plaintiff's excellent work history and the surgical interventions plaintiff underwent.  This Court may not substitute its own judgment for that of the ALJ.  Thus, provided substantial evidence supports the ALJ's determination, the Court cannot reverse the decision even if substantial evidence would also support the alternative conclusion.

    2. Credibility

Plaintiff objects to the Magistrate Judge's conclusion that the ALJ did not err in assessing plaintiff's credibility.  Upon review, the Court rejects the argument.  Plaintiff points to no specific legal error made by the ALJ.  Rather, plaintiff simply presents disagreements with the findings.  For example, plaintiff argues that "nothing in the record contradicts a conclusion that she has constant, unremitting pain with periods of acute pain..."  This, however, is simply not true.  The records from Dr. Daoud demonstrate that plaintiff reported "0/10" on a pain scale on a number of occasions.  This medical evidence supports a conclusion that plaintiff's statement that she suffers from a constant state of pain are less than credible.  Simply put, there is nothing in plaintiff's argument that demonstrates any error in the ALJ's assessment of plaintiff's credibility.

## **CONCLUSION**

For the foregoing reasons,  the Court ACCEPTS the Report and Recommendation ("R&R") of Magistrate Judge White and for the reasons stated herein, AFFIRMS the decision of the Commissioner.

    IT IS SO ORDERED.

    /s/ Patricia A. Gaughan  
    PATRICIA A. GAUGHAN  
    United States District Judge

Dated:   11/19/13